## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JESUS VIDAL-MARTINEZ, | ) | |
| A# xxx-xx2-040, | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| vs. | ) | **Case No. 21-cv-224-NJR** |
| | ) | |
| DAMON ACUFF, Warden of Pulaski | ) | |
| County Detention Center, | ) | |
| HENRY LUCERO, ERO/ICE Chicago | ) | |
| Field Office Director, | ) | |
| ALEJANDRO MAYORKAS, Secretary, | ) | |
| Department of Homeland Security, | ) | |
| and MERRICK GARLAND, Attorney | ) | |
| General, | ) | |
| | ) | |
| **Respondents.** | ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Petitioner Jesus Vidal-Martinez is currently in immigration detention at the Pulaski County Detention Center in Ullin, Illinois ("Pulaski"). (Doc. 29). His original Petition for Writ of Habeas Corpus and Request for Release from Detention, invoking 28 U.S.C. § 2241, was filed in the Northern District of Illinois on August 28, 2020, while he was detained in McHenry County. (Doc. 1). After Vidal-Martinez was transferred to Pulaski, he filed his Amended Petition (Doc. 29) and a motion to transfer venue on February 5, 2021. The case was transferred to this Court on February 26, 2021.[1] (Docs. 32,

---

[1] The Northern District denied Respondents' motion to dismiss the case for lack of jurisdiction (Doc. 13), finding that it retained jurisdiction despite Respondents having moved Vidal-Martinez out of the district after his Petition was filed; it had subject matter jurisdiction over the claim that Vidal-Martinez's continued detention during the COVID-19 pandemic violates his due process

36).

Vidal-Martinez asserts that his ongoing detention is unconstitutional because this Court must give full faith and credit to the Indiana state court's order releasing him on bond; the Immigration Court's bond proceedings fail to afford him due process; his detention has become indefinitely prolonged; and his exposure to COVID-19 in the detention facility amounts to unconstitutional punishment. Vidal-Martinez seeks a declaratory judgment stating that he is eligible for release on bond and that his continued detention is unlawful, or in the alternative an order for his immediate release or for Respondents to provide him with a constitutionally compliant bond hearing. (Doc. 29, p. 28).

Respondents filed their Response to the Amended Petition (Doc. 43). Vidal-Martinez filed a Reply (Doc. 44) and a Motion to Strike portions of the Response (Doc. 46). Respondents oppose the Motion to Strike (Doc. 50). Vidal-Martinez filed a status update and reply regarding the Motion to Strike (Doc. 52). The Court heard arguments on the motion on April 29, 2021, took it under advisement, and ordered another status report on Vidal-Martinez's immigration hearing on May 3, 2021. (Docs. 57, 58). The status report states that Vida-Martinez concluded the presentation of evidence on his application for

---

rights, but it lacked jurisdiction to the extent that the Petition seeks review of the Immigration Judge's decision to deny bond. (Doc. 17). Respondents moved to reconsider that Order (Docs. 18, 19), Vidal-Martinez responded (Doc. 23), and Respondents replied (Doc. 24), but the motion was never addressed because the case was transferred to this Court. Respondents' chief arguments for reconsideration—that while Vidal-Martinez was held by state officials, DHS/ICE had no control over his custody, conditions of confinement, the length of his detention while he was in state custody, or even whether the ICE detainer to return him to ICE custody would be honored—became moot with regard to the question of jurisdiction when Vidal-Martinez was returned to ICE custody again in January 2021.

cancellation of removal; closing arguments are due in writing by May 10, 2021; and the Immigration Judge ("IJ") will then take his case under advisement and issue a written decision. (Doc. 59).

In light of the Court's findings outlined below, the Court **grants** Vidal-Martinez's request for release from custody.

## BACKGROUND

Vidal-Martinez, a citizen of Mexico, was taken into custody by the Department of Homeland Security ("DHS") on June 15, 2020, after an alcohol-related arrest in Indiana two days earlier. (Doc. 29, p. 1; Doc. 43-1, p. 2). Immigration and Customs Enforcement ("ICE") commenced removal proceedings, and Vidal-Martinez has remained in detention ever since. (Doc. 43-1, p. 2). The parties dispute whether the approximate four month period (between September 24, 2020 and January 21, 2021) when Vidal-Martinez was in the custody of Decatur County, Indiana, officials should be included when counting the length of his detention attributable to DHS/ICE. (Doc. 43, p. 18; Doc. 44, pp. 1, 5; Doc. 46, pp. 1-4; Doc. 50, pp. 1-5; Doc. 52).

Vidal-Martinez, now age 39, entered the United States in 2003 without inspection and has lived and worked here since that time. (Doc. 29, p. 5; Doc. 29-10, p. 4; Doc. 43-1, p. 2). He is married to a U.S. Citizen, and they are the parents of 4 young children, all U.S. Citizens. (Doc. 29, p. 5). He has applied for cancellation of removal pursuant to 8 U.S.C. § 1229b(b); if granted he could obtain legal permanent resident status. (Doc. 29-10). Vidal-Martinez's application was heard on March 24, 2021, April 15, 2021, and May 3, 2021, by an IJ; a written decision will be issued at some point after the parties submit written

closing arguments on May 10, 2021. (Docs. 49, 56, 59).

Vidal-Martinez had no run-ins with law enforcement until January 2019, when he was arrested in Howard County, Indiana, for operating a vehicle while intoxicated ("OWI") (Doc. 29, pp. 5-6). He links his alcohol use to his deep depression following the death of his mother in 2017; he had been unable to visit her in Mexico during her illness or attend her funeral. (Doc. 29, p. 5; Doc. 29-7, pp. 4, 6-13). Vidal-Martinez was arrested again for OWI in Decatur County, Indiana, on November 8, 2019 (Docs. 29-4, 29-5), and in Fulton County, Indiana, on June 13, 2020, when he was found sleeping in a parked car with alcohol in his system (Doc. 29-1, 29-3). None of the cases involved an accident or injury, and he was released on bond after each arrest. All three cases remained pending when Vidal-Martinez entered immigration custody.

ICE initially held Vidal-Martinez in the McHenry County Detention Center, which has a contract to house immigration detainees. His first motion for bond was denied by the IJ on July 16, 2020, based on a finding that he was a danger to the community, and his redetermination request was denied. (Doc. 13-1; Doc. 19-1, p. 4; Doc. 43, p. 1). He appealed the denial of bond to the Board of Immigration Appeals ("BIA"). (Doc. 23, p. 1; Doc. 43, p. 1).

After Vidal-Martinez sought habeas corpus relief in August 2020, Respondents transferred him on September 24, 2020, into the custody of Decatur County, Indiana, officials.[2] Vidal-Martinez contends that the transfer was premised on the Decatur County

---

[2] Respondents transferred Vidal-Martinez in September 2020 to another ICE contract facility, the Clay County, Indiana, Jail, after communication with Decatur County officials. The Decatur

officials' agreement that he would remain in detention and would not be released. (Doc. 29, pp. 6-7). Respondents state that the transfer was prompted by Vidal-Martinez's claim that his detention by ICE in Illinois infringed on his due process rights to defend himself in the pending Indiana cases and his counsel did not object to the transfer plan. (Doc. 19, pp. 3, 5-6; Doc. 19-1, pp. 4-5; Doc. 43, p. 2).

While in Decatur County, Vidal-Martinez was found guilty of the November 2019 misdemeanor charges of OWI and operating without a license in Case No. 16D01-1911-CM-001458. On January 20, 2021 he was sentenced to 236 days in jail, with credit for 118 days in custody and 118 days good time credit, equaling time served. (Doc. 29-5). Vidal-Martinez was then transferred back to ICE custody and placed at the Pulaski County Detention Center.[3] The IJ again denied his motion for bond (Doc. 29-7) on February 1, 2021, finding that Vidal-Martinez did not meet his burden to show that he is not a danger to the community.[4] (Doc. 29, p. 8; Doc. 29-8).

## DISCUSSION

Vidal-Martinez is in custody pursuant to 8 U.S.C. § 1226(a), under which "an alien *may* be arrested and detained pending a decision on whether the alien is to be removed from the United States." (Doc. 29, p. 9; Doc. 43, p. 7); 8 U.S.C. § 1226(a) (emphasis added).

---

County Superior Court issued a writ of habeas corpus ad prosequendum for Vidal-Martinez to be transferred to state custody until the completion of his pending criminal case, whereupon he would be released on a detainer to ICE. (Doc. 19, pp. 3-4; Doc. 19-1, pp. 5-6; Doc. 43, p. 2; Doc. 52).

[3] Howard County, Indiana, officials indicated that they would not take Vidal-Martinez into custody when his Decatur County criminal prosecution ended. (Doc. 26; Doc. 43, p. 3).

[4] The IJ made this finding after considering the records Vidal-Martinez submitted of his conviction in the Decatur County, Indiana, OWI case and his arrests in the still-pending Fulton County and Howard County cases. (Doc. 29-7, pp. 15-40).

During removal proceedings, the Attorney General has discretion to continue to detain the arrested noncitizen or to release him or her on a minimum $1,500.00 bond or on conditional parole. 8 U.S.C. § 1226(a)(1) and (2). Because "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review" (8 U.S.C. § 1226(e)), this Court may not sit in review of an IJ's discretionary decision to deny bond. Nonetheless, federal courts have habeas corpus jurisdiction to determine whether an immigration detainee's custody has become unconstitutional. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018) (Section 1226(e) does not bar court review of constitutional challenge to the statutory framework under which noncitizen is detained without bail). Exhaustion of administrative remedies after a denial of bond is not an absolute requirement, and a constitutional challenge falls within the recognized exceptions to the general exhaustion rule. *See Gonzalez v. O'Connell*, 355 F.3d 1010, 1016-17 (7th Cir. 2004) (noting the BIA has no jurisdiction to adjudicate constitutional issues); *Iddir v. INS*, 301 F.3d 492, 498 (7th Cir 2002)).

Under 28 U.S.C. § 2241, a federal habeas court may grant release to a person who "is in custody in violation of the Constitution or laws or treaties of the United States." Noncitizens may challenge the fact of their civil immigration detention via a Section 2241 petition, *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001), and courts may consider individualized challenges to the constitutionality of immigration detention. *See Jennings*, 138 S. Ct. at 851-52; *Nielsen v. Preap*, 139 S. Ct. 954, 972 (2019) ("Our decision today on the

meaning of that statutory provision [§ 1226(c)][5] does not foreclose as-applied challenges—that is, constitutional challenges to applications of the statute as we have now read it."); *Preiser v. Rodriguez*, 411 U.S. 475, 484, 500 (1973); *Zadvydas*, 533 U.S. 678, 687 (2001); *Vargas v. Beth*, 378 F. Supp. 3d 716, 722-23 (E.D. Wisc. 2019) (federal courts have jurisdiction over due process challenges to detention) (collecting cases).

The ordinarily "brief" detention associated with pending removal proceedings is constitutionally permissible. *Demore v. Kim*, 538 U.S. 510, 528-31 (2003) (observing that detention under § 1226(c) lasts for less than 90 days "in the majority of cases"). But detention that becomes indefinite "would raise serious constitutional concerns." *Zadvydas*, 533 U.S. at 682 (detention longer than six months during attempts to execute final order of removal was presumptively unreasonable). The Seventh Circuit has observed that "[i]t would be a considerable paradox to confer a constitutional or quasi-constitutional right to release on an alien ordered removed (*Zadvydas*) but not on one who might have a good defense to removal." *Hussain v. Mukasey*, 510 F.3d 739, 743 (7th Cir. 2007). Vidal-Martinez is in the latter category, as he is currently pursuing a cognizable defense to the pending removal proceedings.

Detainees have the right to procedural due process in relation to restraints on their liberty. *Demore*, 538 U.S. at 523; *Zadvydas*, 533 U.S. at 690. At the same time, the

---

[5] Section 1226(c) mandates detention pending removal proceedings for certain "criminal aliens" as defined therein and authorizes release only in narrow circumstances. In contrast, detention under § 1226(a) is discretionary, not mandatory. Respondents do not contend that Vidal-Martinez has a criminal conviction or pending charge that would subject him to § 1226(c) mandatory detention.

government has a valid interest in detaining a noncitizen to (1) protect the community from danger or (2) prevent flight and ensure appearance at immigration proceedings. A habeas court must assess whether civil immigration detention is reasonably related to one of these purposes, balancing the detainee's significant liberty interest against the government's interests. *See also Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Further, a habeas court has the inherent power to grant bail to a detainee. *Cherek v. United States*, 767 F.2d 335, 337 (7th Cir. 1985).

A civil detainee is entitled to at least the same constitutional due process protections as are afforded to a criminal pretrial detainee. *See Kansas v. Hendricks*, 521 U.S. 346, 357 (1997) (involuntary civil commitment must be subject to "proper procedures and evidentiary standards"); *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (freedom from physical restraint is "at the core of the liberty protected by the Due Process Clause from arbitrary governmental action"); *see also Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999) (drawing a parallel between criminal pretrial detention and civil immigration detention). The government must justify continued civil confinement with "clear and convincing evidence" that the detainee poses a danger to the community. *Foucha*, 504 U.S. at 80. In assessing the constitutionality of continued immigration detention, courts consider several relevant factors, including: the length of immigration detention to date and whether it exceeds the time the noncitizen was in prison for the crime that prompted removal proceedings; the likely duration of future detention; the conditions of detention and whether it is meaningfully different from punitive detention; whether delays in the removal proceedings were caused by the detainee or the government; and the likelihood

8

that removal proceedings will be successful in light of any colorable defenses to removal. *See Vargas v. Beth*, 378 F. Supp. 3d 716, 727 (E.D. Wisc. 2019); *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858 (D. Minn. 2019).

In Vidal-Martinez's case, the length of his detention raises a constitutional concern. Respondents' argument that he has been detained in ICE custody in relation to removal proceedings for only an approximate six months[6] is unpersuasive and belied by the record, which shows that Respondents initiated and facilitated his transfer to Indiana authorities in September 2020. (See Doc. 24, p. 9; Doc. 43, pp. 2-3; Doc. 50, pp. 3-5; Doc. 52 and attachments). The paper trail shows that Respondents and the Indiana transferees expected Vidal-Martinez to be returned to ICE custody when his state criminal proceedings concluded, and this is in fact what happened. (Doc. 19-1, pp. 7, 13; Doc. 29-4; Doc. 52 and attachments). Further, the vehicle employed for the transfer—a writ of habeas corpus ad prosequendum—does not ordinarily effectuate a change of primary custody from one sovereign to another, but merely represents a temporary change in the detainee's location. *Jake v. Herschberger*, 173 F.3d 1059, 1061 n.1 (7th Cir. 1999) (writ of habeas corpus ad prosequendum permits the "receiving sovereign" to temporarily "borrow" a detainee from the "sending sovereign" for the limited purpose of prosecution and does not effectuate a change of custody). *See also Pope v. Perdue*, 889 F.3d 410, 415 (7th

---

[6] As of March 26, 2021, Respondents asserted Vidal-Martinez has been in ICE custody related to his removal proceedings for "only approximately five months" (June 15, 2020 – September 24, 2020, and January 21, 2021 to the present). (Doc. 50, p. 5). As of the date of this Order, these combined periods of detention exceed six months and 22 days. This over-six month period is enough to trigger constitutional scrutiny in light of *Zadvydas*, even if the Court were to agree with Respondents' contention that the time Vidal-Martinez spent in Indiana should not be counted as immigration detention.

Cir. 2018) (relevant inquiry to determine whether a transfer effectuates a change of custodian is whether the arresting/transferor sovereign intended to relinquish primary custody). The documents submitted by Vidal-Martinez further demonstrate that ICE did not intend to relinquish its right to detain him. (Doc. 29-4; Doc. 52; Docs. 52-1 through 52-8).

Additionally, had the transfer not taken place, the IJ's consistent denials of Vidal-Martinez's requests for release on bond are a strong indication that he would have remained in ICE custody during the pendency of his removal proceedings. In light of the record, the Court concludes that the entire length of Vidal-Martinez's detention, including the 118 days he spent in Indiana between September 24, 2020, and January 21, 2021, is attributable to Respondents. The total length of his detention in connection with his removal proceedings since June 15, 2020, now exceeds ten months.

The length of Vidal-Martinez's immigration detention exceeds the time he served for the OWI offense that prompted his removal proceedings—over ten months compared to his sentence of just under four months. Even if the Court were to accept Respondents' argument that they have held him for only an approximate 6-1/2 months (see Doc. 43, p. 18), the OWI sentence is shorter and continues to diminish in comparison with each day that Vidal-Martinez remains in detention at Pulaski.

The likely duration of Vidal-Martinez's future detention in ICE custody is uncertain. His request for cancellation of removal remains unresolved; a decision will not be issued until sometime after final arguments, due May 10, 2021, are filed. An IJ decision in Vidal-Martinez's favor could lead to his release on bond, but Respondents still have

the power to detain him if they were to appeal such a ruling to the BIA. (Doc. 29, pp. 19-20). Alternatively, if the IJ denies cancellation, Vidal-Martinez would almost certainly remain in detention during an appeal of that adverse decision. The backlog of cases pending before the BIA indicates that his detention is likely to last for many months and could exceed another year before Vidal-Martinez could be deported—if Respondents succeed in obtaining a removal order. (Doc. 29-9).

Vidal-Martinez argues that his detention has placed him at risk of serious harm because of his exposure to the COVID-19 virus while in congregate facilities including the McHenry County Detention Center, the Decatur County, Indiana, Jail, and Pulaski County. The conditions of his current placement at Pulaski are most relevant to this Court's habeas inquiry. Respondents aver that the dangers from the COVID-19 pandemic have largely been mitigated at Pulaski because the number of infections has gone down, and the Johnson & Johnson COVID-19 vaccine is now available to detainees and staff. They also note that Vidal-Martinez declined the opportunity to receive this vaccine. (Doc. 50, p. 8). At this time, the Court cannot conclude that the conditions of Vidal-Martinez's confinement warrant his release from custody, but the potential danger posed by the COVID-19 pandemic to Pulaski detainees has not been entirely abated.

Vidal-Martinez's removal proceedings were terminated without prejudice after he was transferred to Indiana. (Doc. 43-1, p. 2). He argues that Respondents' actions caused the delay because that transfer meant that he was unable to attend immigration hearings while he was held by Indiana state authorities. (Doc. 29, pp. 22-23). Respondents suggest that Vidal-Martinez delayed the immigration proceedings when he chose to defend

against the OWI charge in Indiana. (Doc. 50, p. 4). The Court notes that Vidal-Martinez had an absolute right to mount a defense to the state charges. Further, the Court has already concluded that the transfer to Indiana was engineered by Respondents, and thus the Court will not attribute the resulting delay in the immigration matter to Vidal-Martinez. Under the circumstances of the transfer, there was no realistic choice other than to suspend the immigration proceedings. As soon as Vidal-Martinez was returned to ICE officials, he was served with notice to appear before an IJ, where he promptly took steps to present his request for cancellation of removal. (Doc. 43-1, pp. 2-3). The March 24 hearing on the cancellation request was continued to April 15, 2021, and again to May 3, 2021, to allow Vidal-Martinez to fully present his evidence. In light of these facts, the Court cannot conclude that Vidal-Martinez caused a delay in the immigration proceedings.

Vidal-Martinez has raised a colorable defense to removal which may succeed in defeating Respondents' efforts to remove him. The Court cannot conclude that Respondents are likely to obtain a removal order, or that Respondents will succeed in removing Vidal-Martinez in the reasonably foreseeable future.

In balancing the government's interest in continued detention against Vidal-Martinez's liberty interest, Respondents have not raised an argument or presented evidence, let alone clear and convincing evidence, that he poses a risk of flight if released from custody. Instead, they point to the IJ's denial of bond based on the finding that he was a danger to the community because of his arrest record and argue that the bond proceeding provides Vidal-Martinez with all the process that he is due. Vidal-Martinez

cogently points out that the very Indiana authorities responsible for his prosecution following those arrests did not consider him too dangerous to be released on bail. Even after his third arrest (Fulton County), Vidal-Martinez was granted release. Setting aside the question of whether this Court is required to give full faith and credit to that bail determination, Respondents have not argued or presented clear and convincing evidence that Vidal-Martinez would present a danger to the community if he is granted habeas relief.[7] To address this concern, Vidal-Martinez plans to reside upon his release with his former spouse Alicia in Michigan, and she has committed to provide him with transportation so that he will not have the need to drive. (Doc. 29-7, pp. 5, 41-43).

To summarize, there is no clear and convincing evidence before the Court that Vidal-Martinez poses either a risk of flight or a danger to the community that would justify the continuation of his detention, which now exceeds ten months. Further, the record does not show that Respondents will be able to effectuate Vidal-Martinez's removal from the United States in the reasonably foreseeable future. In consideration of the length of Vidal-Martinez's immigration detention to date and the likelihood that his detention will be indefinitely prolonged during the adjudication of his request for cancellation of removal, the Court concludes that habeas corpus relief is warranted subject to the conditions set forth below. Certain conditions are imposed in consideration of the fact that Vidal-Martinez will be released from a detention facility where he may have been exposed to the COVID-19 virus, thus it is prudent to limit his contact with the

---

[7] Respondents took the position at the April 29 hearing on the motion to strike that they would not litigate the matters of danger to the community or risk of flight in the habeas corpus context.

public following his release.

**DISPOSITION**

**IT IS HEREBY ORDERED** that the Amended Petition for Writ of Habeas Corpus (Doc. 29) is **GRANTED**. Petitioner's Consolidated Motions to Strike (Doc. 46) are **DENIED as moot**.

Respondents are **ORDERED to RELEASE** Petitioner Jesus Vidal-Martinez, pursuant to the following conditions:

1. Petitioner will reside at a certain residence, will provide his address and telephone contact information to Respondents, and will quarantine there for at least the first 14 days of his release;

2. Petitioner will comply with national, state, and local guidance regarding staying at home, sheltering in place, and social distancing;

3. The Court's Order for release from detention may be revoked and Petitioner may be re-detained should Petitioner fail to comply with this Order of release or with any condition of release set by the Department of Homeland Security ("DHS")/Immigration and Customs Enforcement ("ICE");

4. This Order does not prevent Respondents from taking Petitioner back into custody should Petitioner commit any crimes that render him a threat to public safety or otherwise violate the terms of release;

5. **On or before May 12, 2021** (within **7 days** of the date of this Order), Respondents will provide transportation for Petitioner Vidal-Martinez from Pulaski County Detention Center to the ICE-contracted detention facility in Clay County, Indiana, where he will be **IMMEDIATELY RELEASED** to a friend/family member who will transport him to the private residence where he will stay. Respondents will facilitate communication between Vidal-Martinez and that friend/family member to advise of the date and time of his arrival at the Clay County detention facility;

6. Petitioner will not violate any federal, state, or local laws; and

7. At the discretion of DHS and/or ICE, to enforce the above restrictions,

Petitioner's whereabouts may be monitored by telephonic and/or electronic and/or GPS monitoring and/or location verification system and/or an automated identification system.

The Clerk of Court is **DIRECTED** to close this case and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED:  May 5, 2021**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**